THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      v.<br><br>CARLOS CARTAGENA,<br>                *Defendant.* | )<br>)<br>)<br>)  No. 16 CR 463-18<br>)<br>)  Chief Judge Virginia M. Kendall<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

In December 2023, the Court sentenced Carlos Cartagena to 120 months in prison for his role in a racketeering conspiracy involving the Latin Kings. (Dkt. 2988). Cartagena now moves for compassionate release under 18 U.S.C. § 3582(c)(1). (Dkt. 3234); (Dkt. 3243). For the reasons outlined below, the Court denies Cartagena's Motions [3234] and [3243].

**BACKGROUND**

On July 21, 2016, Cartagena was charged with one count of conspiring to commit racketeering activity. (Dkt. 2 at 10-11). On October 9, 2018, Cartagena pleaded guilty to the charge. (Dkt. 1133 at 2). Cartagena admitted that, as a member of the Latin Kings gang, he held various leadership positions, shot rival gang members 15 different times, used force against other members who did not pay dues to the gang, and provided protection to members who sold illegal narcotics. (*Id.* at 4-5). He also admitted to committing five attempted murders as a gang member. (*Id.* at 6-9). The parties agreed that, given Cartagena's cooperation with the Government's investigations into his co-conspirators, the Government would recommend a sentence of 120 months' imprisonment instead of the calculated Guidelines range of 324 to 405 months. (*Id.* at 16-19).

1

At sentencing, after considering the Section 3553(a) factors, the Court accepted the parties' agreement and sentenced Cartagena to 120 months' imprisonment and three years' supervised release based on Cartagena's mitigating circumstances, including his cooperation with the Government and his commitment to rehabilitation. (Dkt. 2989 at 5). Cartagena is now serving his sentence; his expected release date is July 4, 2027. (Dkt. 3234, Exhibit 6).

On January 3, 2024, Cartagena requested that the Bureau of Prisons (BOP) recommend a sentence reduction and grant him compassionate release to regain custody of his son and care for his sick daughter (Dkt. 3234, Exhibit 2). On January 4, 2024, the Warden denied Cartagena's request on the grounds that Cartagena failed to meet the criteria of showing extraordinary or compelling circumstances as required by U.S.C. 18 § 3582(c)(1)(A). (*Id.*). Cartagena filed a second request with the BOP on December 16, 2024 (Dkt. 3266, Exhibit A), after he filed the present Motions, (Dkt. 3234); (Dkt. 3243), and after the Government responded his initial Motion (Dkt. 3240). Cartagena argued again that compassionate release was warranted to regain custody of his son. (Dkt. 3266, Exhibit A). He also argued that compassionate release was warranted because he was found ineligible for early release through the BOP's refusal to apply his ETC and consider him for home confinement or other RRC programs due to his status as a government cooperator. (*Id.*). The BOP received this request on January 21, 2025, (Dkt. 3266, Exhibit A), and denied it on the same day on the grounds that Cartagena failed meet the criteria of showing extraordinary or compelling circumstances. (Dkt. 3266, Exhibit B).

On March 11, 2024, Cartagena filed the present compassionate release motion, (Dkt. 3234), which was initially filed incorrectly. (Dkt. 3233). Cartagena makes two arguments in attempt to establish an extraordinary and compelling reason, which warrants the Court to reduce his sentence. First, he argues that the BOP has found him ineligible for early release by failing to

2

apply his Earned Time Credits (ETC) due to his status as a government cooperator. (*Id.* at 5-9). Second, he argues that he wants to regain custody of his son, who has been placed in the care of a family friend following the death of his son's mother, and to help care for his teenage daughter, who requires supervision and medical care after being electrocuted as a child. (Dkt. 3234 at 10).

On November 17, 2024, Cartagena filed a supplement to his Motion. (Dkt. 3243). In his Supplemental Motion, Cartagena repeats his arguments relating to his ETC. (*Id.* at 2-4). He also argues that his inability to participate in the Residential Drug Abuse Program ("RDAP") or get placed in a Residential Reentry Center ("RRC") constitutes an additional extraordinary and compelling reason to reduce his sentence. (*Id.*).

## **LEGAL STANDARD**

Generally, a federal court "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c); but the law gives the court power to order a prisoner's early release if "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). To obtain compassionate release, a defendant must first exhaust all administrative remedies with the BOP. 18 U.S.C. § 3582(c)(1)(A)(iii).

Once a defendant has exhausted the available administrative remedies, he must then satisfy the Seventh Circuit's two-step test. *See United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022); *United States v. Sarno*, 37 F.4th 1249, 1252–53 (7th Cir. 2022). At step one, a defendant must identify "an 'extraordinary and compelling' reason warranting a sentence reduction." *Peoples*, 41 F.4th at 840 (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)). If the defendant identifies such a reason, the court proceeds to the second step and "exercis[es] the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in §

3

3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.* (alteration in original) (quoting *Thacker*, 4 F.4th at 576).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

In his initial Motion, Cartagena contends that he exhausted all administrative remedies by submitting the January 2024 request to the BOP prior to filing a motion in this Court. (Dkt. 3234 at 2). The Government agrees that Cartagena exhausted available remedies with respect to his family circumstances claims but argues that he failed to exhaust his administrative remedies for his early release claims because they were not included in that request. (Dkt. 3240 at 8-9). Cartagena responds to this argument by claiming that his second request to the BOP in December 2024 fully exhausts his remedies. (Dkt. 3266 at 4).

Section 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule that federal courts must enforce if invoked. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). Under § 3582(c)(1)(A)'s exhaustion requirement, once a defendant takes the preliminary step of submitting a compassionate release request to the warden, a defendant may file a motion for compassionate release in the district court after (1) "the defendant has fully exhausted all administrative rights to appeal [a denial of the request]" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This means that a defendant must exhaust his administrative remedies *prior to* filing a motion for compassionate release with the Court. *See United States v. Williams*, 987 F.3d 700, 702 (7th Cir. 2021); *United States v. Norris*, 2022 WL 1091564, *1 (7th Cir. Apr. 12, 2022). To properly exhaust administrative remedies, a defendant must "present the same or

4

similar ground for compassionate release in a request to the Bureau as in a motion to the court." *Williams*, 987 F.3d at 703.

Cartagena failed to properly exhaust his administrative remedies with respect to his early release eligibility arguments. Cartagena's first request to the BOP does not mention the ETC, RDAP, or RRC bases argued in the present Motions. (Dkt. 3234, Exhibit 1). After the Government filed their response, Cartagena attached a copy of his second administrative request to his reply, which raises the exact grounds for compassionate release that the Government indicated were missing from the first request. (Dkt. 3266, Exhibit A). Cartagena submitted this request on December 16, 2024, and it was not received until January 21, 2025. (*Id.*). Cartagena filed his initial Motion on March 11, 2024, (Dkt. 3234), and his Supplemental Motion on November 27, 2024. (Dkt. 3243). The second request to the BOP was clearly filed and received after Cartagena filed his Motions with the Court. The purpose of the exhaustion requirement is to "allow the Bureau an opportunity to evaluate issues *before* they are brought to federal court." *Williams*, 987 F.3d at 703 (emphasis added). Accordingly, Cartagena failed to properly exhaust his administrative remedies with respect to the early release eligibility issues, and the Court declines to consider these arguments now as bases for Cartagena's Motions. *United States v. Cancino*, 669 F. Supp. 3d 715, 717 (N.D. Ill. 2023) (declining to consider two bases for compassionate release that were not raised in defendant's administrative request and held that they were not properly exhausted); *United States v. Crowder*, 2021 WL 698498, at *4 (N.D. Ill. Feb. 23, 2021) (denying motion for compassionate release where defendant failed to exhaust administrative remedies by including different grounds for release in his administrative request).

5

### A. Merits

Having found that Cartagena only exhausted his administrative remedies with respect to his family circumstances bases, the Court must apply the Seventh Circuit's two-step test to determine whether to grant the Motions on these grounds. *Peoples*, 41 F.4th at 840; *Sarno*, 37 F.4th, at 1252–53.

### B. Extraordinary and Compelling Reasons

Cartagena bears the burden of establishing an extraordinary and compelling reason for his release. *United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022). The remaining exhausted grounds Cartagena offers for a reduction of sentence are: (1) he wants to regain custody of his son, who has been placed in the care of a family friend following the death of his mother; and (2) he wants to help care for his teenage daughter, who requires "24-hours supervision," including medical care, feeding, and bathing. (Dkt. 3234 at 10); (Dkt. 3266 at 17). Because these reasons do not meet the standard of extraordinary and compelling, the Court denies Cartagena's Motions.

As amended, the Sentencing Commission's policy statement governing compassionate release, § 1B1.13, identifies the following family circumstances as extraordinary and compelling: (A) the death or incapacitation of the caregiver of the defendant's minor child or child over the age of 18 who is incapable of self-care because of a mental or physical disability or medical condition; (B) the incapacitation of the defendant's spouse when the defendant would be the only available caregiver for them; (C) the incapacitation of the defendant's parent when the defendant would be the only available caregiver for them; and (D) circumstances similar to those listed in (A) through (C) involving any other immediate family member when the defendant would be the only available caregiver for them. U.S.S.G. § 1B1.13(b)(3).

The struggles faced by Cartagena's family are not extraordinary or compelling as the Guidelines and the Court have interpreted these terms. Cartagena first argues that compassionate release is warranted to "help provide care" for his teenage daughter who requires constant supervision and medical care after suffering from an electrocution as a child. (Dkt. 3234 at 10); (Dkt. 3266 at 17-18). His daughter's mother cares for their daughter with the assistance of a nurse during the weekdays and provides care on her own at night and over the weekends. (*Id.*). Cartagena submitted medical records for his daughter indicating that she has cerebral palsy and scoliosis. (Dkt. 3234, Exhibit 4). He also submitted a letter from his daughter's mother describing their daughter's extensive needs and the around-the-clock care that she, with the help of nurses, provides for their daughter. (Dkt. 3266, Exhibit K).

While the Court recognizes the challenges of caring for a child with these conditions while balancing work and other familial responsibilities, Cartagena presents no evidence or arguments that his daughter's mother is incapacitated. In fact, Cartagena admits that his daughter's mother is not "fully incapacitated." (Dkt. 3266 at 18). Instead, he argues that she does not have "full capacity" to care for their due to her work schedule and need to care for her other child. (*Id.*); (Dkt. 3266, Exhibit K). These circumstances are not sufficient to show incapacitation for the purposes of Section 1B1.13(b)(3)(A). *See United States v. Jamison*, 2024 WL 4555406, at *1 (N.D. Ill. Oct. 23, 2024) (holding that caregiver of defendant's child who was over 70 years old, had diabetes, and also cared for defendant's father was not incapacitated); *United States v. McNairy*, 2023 WL 2018782, at *4 (N.D. Ill. Feb. 15, 2023) (mother of defendant's children was not incapacitated where she was sick, but defendant failed to show that she was unable to continue caring for the children).

Next, Cartagena argues that compassionate release is warranted to regain custody of his nine-year-old son. (Dkt. 3234 at 10); (Dkt. 3266 at 19). Cartagena explains that he was given full custody of his son in 2016 after his son's mother died from cancer. (*Id.*). His son has been in the custody of an appointed guardian, a close friend of his son's mother, since Cartagena's incarceration in 2019. (Dkt. 3234 at 10); (Dkt. 3266 at 19). Cartagena recognizes that his son's guardian, who has been his caregiver for over five years, "loves, [sic] and cares" for his son "as if he is one of her own." (Dkt. 3234 at 10). While the death of his son's mother is no doubt tragic, Cartagena does not argue that his son's current guardian is unable to continue care or is caring for his son inadequately. *McNairy*, 2023 WL 2018782, at *4 (denying compassionate release where the mother of defendant's minor children was sick, but defendant's adult children could care for the minors); *United States v. Ogle,* 2022 WL 2307377, at *4 (S.D. Ill. June 27, 2022) (denying compassionate release where defendant failed to demonstrate that his minor children were not being adequately cared for). Cartagena's family circumstances may be moving but Cartagena has not met his burden of showing that they are sufficient and compelling, even when considered together. *United States v. Vaughn*, 62 F.4th 1071, 1072-73 (7th Cir. 2023).

Finally, Cartagena asks the Court to consider his rehabilitation efforts when determining whether he has shown extraordinary and compelling reasons for compassionate release. (Dkt. 3266 at 20). Although Cartagena's educational achievements, participation in group programs, and good behavior are commendable, rehabilitation alone is not an extraordinary and compelling reason for sentence reduction. *Peoples*, 41 F.4th at 841-42. Accordingly, the Court finds that Cartagena has not met his burden of showing extraordinary and compelling reasons for a sentence reduction.

### C. Section 3553(a) Factors

Because Cartagena has not demonstrated extraordinary and compelling circumstances, a consideration of the 18 U.S.C. § 3553(a) factors is not necessary. *See Thacker*, 4 F.4th at 573. Even so, assuming Cartagena had shown that his circumstances were extraordinary and compelling, the § 3553(a) factors weigh against his release. As this Court recognized at Cartagena's sentencing, Cartagena committed an "extremely serious" offense. (Dkt. 2989 at 5). He was a member, and then leader, in the notorious Latin Kings gang, and he committed brutal and senseless acts of violence over his long tenure, including 15 shootings of rival gang members and five attempted murders. (Dkt. 1133 at 4-5). He also facilitated the gang's trafficking of illegal narcotics by providing protection to members who sold the narcotics. (*Id.*). Additionally, Cartagena has a significant criminal history. (Dkt. 2989 at 5). Recognizing these facts, along with mitigating factors including Cartagena's cooperation with the Government and commitment to rehabilitation, the Court initially sentenced him to 120 months of imprisonment pursuant to the parties' agreement, which was well below the calculated Guidelines range. (*Id.* at 2, 5). An additional sentence reduction would undermine the seriousness of the crime, and the current sentence's value in providing just punishment, promoting respect for the law, deterring others from committing similar crimes, and protecting the public. The § 3553(a) factors, therefore, weigh against granting Cartagena's Motions.

**CONCLUSION**

For the foregoing reasons, the Court denies Cartagena's Motions for Compassionate Release [3234] and [3243]. Cartagena's incorrectly filed Motion [3233] is also denied as moot.

_____
Virginia M. Kendall
United States District Judge

Date: October 20, 2025